IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNY MALONE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. CIV-04-435-M |
| ERIC FRANKLIN, Warden, et al., | ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights. Pursuant to an order by United States District Judge Vicki Miles-LaGrange, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Defendants have filed a motion to dismiss/motion for summary judgment,[1] to which the Plaintiff has responded. Thus, the matter is at issue. For the reasons set forth herein, it is recommended that the Defendants' motion for summary judgment be granted.

In his complaint, Plaintiff names as Defendants Eric Franklin, warden of James Crabtree Correctional Center (JCCC), and "Mr. Nichols," a counselor at JCCC. Plaintiff's complaint contains three counts. In Count I, he alleges a violation of his Eighth Amendment rights because he has been denied hygiene items even though he is unable to afford them. Complaint, p. 3. In Count II, he alleges an interference with his First Amendment right to petition the government. Complaint, p. 3. In support, he claims that

---

[1]Although Defendants have moved alternatively for either dismissal under Fed.R.Civ.P. 12(b)(6) or for summary judgment under Fed.R.Civ.P. 56(c), the undersigned has considered matters outside of the pleadings and so will proceed under the standard governing summary judgment motions.

although he was told by Defendant Franklin that he would get indigent supplies, they were still denied by Defendant Nichols, and that he resubmitted a grievance on the matter, but it was returned for being untimely.  In Count III, Plaintiff alleges that an unnamed defendant has failed to follow the policies of the Oklahoma Department of Corrections (DOC), and has been removing 100% rather than 20% of the monies in his trust fund to pay for legal fees, leaving him with nothing, while at the same time, preventing him from meeting the qualifications for indigence.  Complaint, p. 4.

## I.  PROCEDURAL BACKGROUND

Shortly after the complaint was filed herein, the undersigned conducted an initial review as required by 28 U.S.C. § 1915A(a) and  42 U.S.C. § 1997e(c)(1).  As a result of that screening process, the undersigned found that Plaintiff had failed to show exhaustion of administrative remedies, which is an essential element of a  § 1983 claim. Therefore, in a Report and Recommendation dated April 28, 2004, the undersigned recommended that the action be dismissed without prejudice. [Doc. No. 8]. The undersigned also noted that Count III was subject to dismissal not only for Plaintiff's failure to exhaust his administrative remedies, but because no defendant was named therein and there was nothing from the allegations indicating who was responsible for the allegedly improper deductions made from Plaintiff's trust account, and because the DOC's failure to abide by its own policies does not in and of itself show a constitutional violation.  Id. at 5. Thus, Plaintiff was cautioned that if he could amend to show exhaustion, these deficiencies would have to be corrected.  Id. On June 1, 2004, Judge Miles-LaGrange adopted the Report and Recommendation, dismissing Plaintiff's

complaint without prejudice for failure to demonstrate exhaustion of administrative remedies. [Doc. No. 10].

Plaintiff appealed, and on October 28, 2004, the Tenth Circuit Court of Appeals reversed, finding that because Plaintiff had been granted relief as to his grievance requesting that he be found indigent for purposes of receiving hygiene supplies, he was not required to appeal or to institute a new grievance to obtain the same relief. Malone v. Franklin, No. 04-6193, 2004 WL 2407228 (10th Cir. Oct. 28, 2004). The Tenth Circuit did not specifically address Plaintiff's failure to exhaust his claims in Counts II and III of the complaint.[2] Upon remand, the matter was re-referred to the undersigned for further proceedings. [Doc. No. 22].

## II. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party.

---

[2] The Tenth Circuit has held that an action containing both exhausted and unexhausted claims is subject to dismissal: "We agree that the [Prison Litigation Reform Act] contains a total exhaustion requirement, and hold that the presence of unexhausted claims in [the plaintiff's] complaint required the district court to dismiss his action in its entirety without prejudice." Ross v. County of Bernalillo, 365 F.3d 1181, 1189 (10th Cir. 2004); Wilson v. Ward, No. 04-6123, 2005 WL 256575, at **1 (10th Cir. Feb. 3, 2005) (citing Ross, Graves v. Norris, 218 F.3d 884, 885 (8th Cir.2000) ("When multiple prison condition claims have been joined ..., § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims.") and United States v. Mubarak, 315 F.Supp.2d 1057, 1060 (S.D. Cal. 2004) (examining the language of 42 U.S.C. § 1997e(a) and determining that "[u]se of the term 'action' instead of 'claim' evidences an intent to disallow mixed complaints")). The undersigned notes that the citation of Wilson, as well as any other unpublished decision, is solely for its persuasive authority pursuant to Tenth Circuit Rule 36.3.

Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma, 875 F.2d 263, 264 (10th Cir. 1989).  A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Material facts" are "facts that might affect the outcome of the suit under the governing law."  Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id., at 325.  Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact.  Id. at 324. The  nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement.  Anderson, 477 U.S. at 256. Rather, Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324.  The special report filed herein "is treated like an affidavit," Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991), as is the complaint because Plaintiff has made his factual allegations under penalty of perjury. Complaint, p. 6; see Hall, 935 F.2d at 1111.

**III.  UNDISPUTED FACTS**

Based upon the facts as shown by the special report, the complaint, and Plaintiff's objection, the undersigned finds the following material facts to be undisputed. Any disputed facts found not to be material will be discussed in the context of the particular issue to which they apply.

1. Plaintiff first arrived at JCCC on August 12, 2003. Special Report, Att. 2, p. 1.

2. At the time relevant to this action, Plaintiff had incurred in excess of $300 in legal copying expenses related to a federal habeas action. Complaint Attachment, p. 1. Under DOC Policy, such legal "co-pays" are deducted from an inmate's draw account each time a deposit to the draw account is processed until all outstanding co-pays are paid in full. Special Report, Att. 5, p. 3-4 (DOC OP-120230(E)). These amounts are reflected in the "co-pay balance" column on the Inmate Trust Accounting System transaction list. See Special Report, Att. 6.

3. Each year at JCCC, inmates are given a $5.00 seasonal bonus. Special Report, p. 2. On January 7, 2004, Plaintiff spent $4.84 of his seasonal bonus at the canteen on coffee, tobacco, and rolling papers. Id.; Special Report, Att. 7.

4. On January 8, 2004, Plaintiff received an institutional payroll deposit of $20.00. Special Report, Att. 6. Of this amount, $4.00 was deposited to his mandatory savings account, and $16.00 was deposited to his draw account. Id. That same day, $16.16 (the remaining $16.00 payroll and the $.16 remaining from the unspent portion of Plaintiff's seasonal bonus) was applied to his outstanding co-pays. Id.; Special Report, p. 2.

5. On January 12, 2004, Plaintiff submitted a request to staff to "trust fund accounts," asking how much of his institutional payroll, or "gang pay," would be going

to satisfy his outstanding co-pays. Special Report, Att. 3, p. 7. Staff member Anita Donley responded on January 13, 2004, indicating that any money deposited in Plaintiff's draw account would go toward outstanding co-pays until they were paid in full. Special Report, Att. 3, p. 7; Att. 4.

6. On January 20, 2004, Plaintiff filed a grievance with Defendant Franklin asking that he either be permitted to "remain indigent for supplies for hygiene" or that DOC "pro rate my legal co-pays." Special Report, Att. 3, p. 5.

7. On January 26, 2004, Defendant Franklin granted Plaintiff's request, stating that "As per Barbara Pearman, Assistant Administrator of Finance and Accounting, you will be placed on the indigent list. However, if you receive money from the outside, it can also be taken for co-pay." Special Report, Att. 3, p. 6.

8. On February 4, 2004, Plaintiff submitted a request for indigent supplies form to Defendant Nichols, the correctional counselor assigned to housing unit five where Plaintiff resided. Special Report, p. 3; Att. 3, p. 9; Att. 9, ¶ 2-3. Defendant Nichols denied the request for indigent supplies because Plaintiff's name did not appear on the list of indigent inmates supplied by the JCCC business office. Special Report, Att. 9, ¶ 3; Special Report, Att. 10.

9. Defendant Nichols called the JCCC trust fund office on February 4, 2004, and requested information regarding Plaintiff's trust fund account. Special Report, Att. 9, ¶ 4. He was told that Plaintiff received institutional gang pay of $20.00 and a seasonal bonus of $5.00, and therefore he did not qualify as indigent. Id.

10. On February 11, 2004, Defendant Franklin's secretary returned to Plaintiff a grievance which he submitted on February 9, 2004, with a cover sheet stating "THIS PAPERWORK IS BEING RETURNED FROM THE WARDEN'S OFFICE FOR THE FOLLOWING REASON: Date: 2-11-04" with the line "Grievances – No Request to Staff attached" circled. Plaintiff's Objection, Ex. 5A. The sheet also bears the following handwritten notation: "Mr. Malone, You must attach your most recent RTS. Please read pg. 1 of your grievance pkg. C. Parks 2-11-04 Warden's Sec.". Id.

11. On February 16, 2004, Petitioner sent his original grievance and request to staff stapled together, and a letter and indigent request form stapled together, to the DOC administrative office in Oklahoma City. Plaintiff's Objection, p. 2.

12. On February 26, 2004, Director's Designee Melinda Guilfoyle returned the grievance appeal Plaintiff had submitted, indicating that the appeal was being returned for three procedural irregularities: attachments to the grievance (other than one request to staff); no grounds for appeal; and the appeal was not signed/dated. Special Report, Att. 3, p. 4. The letter from Ms. Guilfoyle indicated that the grievance appeal could be resubmitted within ten calendar days. Id. The materials received in Administrative Review on February 17, 2004, included Plaintiff's grievance form, Defendant Franklin's response, the January 12 request to staff, a hand-written page explaining Plaintiff's claim that he had still been denied indigent supplies after Defendant Franklin had granted relief, and the February 4 indigent request form. Special Report, Att. 3, p. 5-9.

13. The grievance appeal section of Defendant Franklin's response sent to the DOC in Oklahoma City for administrative review shows that neither of the two boxes

indicating the grounds for appeal is checked, and the appeal section of the response form is neither signed nor dated. Special Report, Att. 3, p. 6.

14. In his affidavit, Defendant Nichols states that after the request on February 4, 2004, and up until Plaintiff's transfer from JCCC on May 12, 2005, Plaintiff never again requested indigent supplies from him, to his knowledge. Special Report, Att. 9, ¶ 6. Plaintiff's unit manager Suzie Salinas also states in her affidavit, to her knowledge, that Plaintiff neither requested nor presented an issue to her about not receiving indigent supplies. Special Report, Att. 14, p. 1 ¶ 5

15. Inmates must request indigent supplies; they are not automatically issued. Special Report, p. 4; Att. 9, ¶ 6. The only two requests for indigent supplies reflected in the record are the one given to Defendant Nichols on February 4, 2004, and an unidentified request dated March 1, 2004, and attached to Plaintiff's Objection. Special Report, Att. 3, p. 9; Att. 9, ¶ 4-6; Plaintiff's Objection, Ex. 4, p. 2.

16. From April 8, 2004, through April 18, 2005, Plaintiff received either good or outstanding personal hygiene ratings on his adjustment reviews. Special Report, Att. 14, p. 2-8.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As noted above, Defendants Franklin and Nichols have now moved for summary judgment on several grounds. As an initial matter, the undersigned notes that Defendants have again raised the issue of exhaustion of administrative remedies, focusing on Plaintiff's failure to exhaust his remedies with regard to Counts II and III of the complaint. However, the Tenth Circuit's decision made no distinction between the three

claims raised herein and thus its general finding that Plaintiff has "exhausted all available administrative procedures" is the law of the case. <u>Salehpoor v. Shahinpoor</u>, 358 F.3d 782, 785 n. 4 (10th Cir. 2004) (citing <u>United States v. Platero</u>, 72 F.3d 806, 810 (10th Cir. 1995) (when court decides upon rule of law, decision should continue to govern same issues in subsequent stages of the case)). Accordingly, the undersigned will proceed to consider the other grounds raised in Defendants' motion.

### A. ELEVENTH AMENDMENT IMMUNITY

Defendants claim they are entitled to immunity from suit pursuant to the Eleventh Amendment. Defendants' Motion, p. 15. The Eleventh Amendment provides that a state is immune from suit in federal court unless the state unmistakably waives its immunity or Congress explicitly abrogates the state's immunity by statute. <u>Welch v. Texas Dept. of Highways</u>, 483 U.S. 468, 472-73 (1987). The State of Oklahoma has not waived its Eleventh Amendment immunity. Okla. Stat. tit. 51 § 152.1(B) (2001) ("it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution"). Likewise, Congress has not abrogated Oklahoma's Eleventh Amendment immunity through enactment of § 1983. <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979).

Plaintiff does not specify whether he is suing Defendants in their official capacities, individual capacities, or both. In any event, to the extent Plaintiff's claims are brought against Defendants in their official capacities for monetary damages, such claims are barred by the Eleventh Amendment. <u>White v. Colorado</u>, 82 F.3d 364, 366 (10th Cir. 1996) (claim for monetary relief against § 1983 defendants sued in their official capacities is barred by the Eleventh Amendment).

**B. EIGHTH AMENDMENT**

Defendants also claim that they are entitled to summary judgment on Plaintiff's claim in Count I that they have violated his rights under the Eighth Amendment. Defendants' Motion, p. 9. The Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). See Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1980) (states must provide their inmates with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, and plumbing)"). The Eighth Amendment requires prison officials to "provide humane conditions of confinement," which includes taking "reasonable measures to guarantee the safety of the inmates." An inmate who claims that prison officials have violated the Eighth Amendment by failing to provide a safe environment must first demonstrate that the deprivation was "objectively, 'sufficiently serious,'" as only those deprivations denying the "minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). If this "objective" element is established, the inmate must then establish what has become known as the "subjective" element – that prison officials had a "'sufficiently culpable state of mind'" in allowing the deprivation to take place, i.e., that the prison officials acted with deliberate indifference to the inmate's

health or safety.  Id. (quoting Wilson, 501 U.S. at 297).  See also Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 809 (10th Cir. 1999) (recognizing deliberate indifference as the proper standard for subjective component of Eighth Amendment claims based on conditions of confinement).  "[D]eliberate indifference' is a stringent standard of fault," Board of County Com'rs v. Brown, 520 U.S. 397, 410 (1997), which cannot be satisfied by a mere showing of ordinary lack of due care.  Farmer, 511 U.S. at 835-36.

Defendants contend that Plaintiff has not shown that his hygienic conditions fell so far below minimum standards that the Eighth Amendment was violated.  Defendants' Motion, p. 11.  They note that Plaintiff received either "good" or "outstanding" ratings on personal hygiene during his adjustment reviews.  Id.  They further note that Plaintiff does not allege that he suffered any kind of detrimental health effects or physical injury, and that the Eighth Amendment is not violated when hygienic conditions do not meet a prisoner's personal standards of cleanliness.  Id.  With regard to the subjective element, Defendants state that Plaintiff has failed to show that either of them was aware of an excessive risk to his health or safety.  Id.  They state that Plaintiff had the opportunity to purchase hygienic supplies with his seasonal bonus and so was not on the February indigent list, and that he would have received indigent hygiene supplies had he made another request for them.  Id. Defendant Nichols contends that he was not aware that access to hygiene supplies was an issue for Plaintiff, and that Plaintiff never approached his housing unit manager about the issue either.  Id. at 12.

After reviewing Plaintiff's objection and the documents attached thereto, as well as the complaint and the special report, the undersigned finds that Plaintiff has failed to

11

come forward with evidence showing that he can satisfy the necessary objective and subjective elements of his Eighth Amendment claim against either of the two Defendants.

First, with regard to Defendant Franklin, the undisputed facts show only that he *granted* Plaintiff's request to be placed on the indigent list. Plaintiff has failed to come forward with any evidence showing that Defendant Franklin actually knew that Plaintiff did not receive indigent hygiene supplies. Moreover, neither of the two subsequent administrative steps taken by Plaintiff support an inference that Defendant Franklin was aware of Plaintiff's problems in receiving supplies after Defendant Franklin granted relief. Although Plaintiff apparently attempted to submit a grievance to Defendant Franklin on February 9, 2004, the grievance was returned to Plaintiff by "C. Parks" because it was not accompanied by a request to staff. Plaintiff's Objection, Ex. 5A. Rather than correct the noted deficiency and then proceed with that administrative remedy as instructed – by filing a request to staff and then, if necessary, a grievance – Plaintiff instead sent his *first* grievance to the Director's Designee for administrative review, only to have it returned to him for procedural deficiencies (which he again failed to correct). In short, Plaintiff asked Defendant Franklin to place him on the list to receive indigent hygiene supplies and Defendant Franklin granted his request. Thus, Plaintiff has come forward with no evidence showing that Defendant Franklin took any action which would deprive him of a safe and humane environment, much less that he did so with deliberate indifference.

Turning to Defendant Nichols, the evidence does indeed show that he denied Plaintiff's February request for indigent hygiene supplies.[3] However, there is no evidence that Plaintiff thereby suffered a denial of the "minimal civilized measure of life's necessities" sufficiently grave to form the basis of an Eighth Amendment violation, and the evidence is inconsistent with an inference that Defendant Nichols acted with deliberate indifference. For example, Plaintiff has not come forward with evidence showing the particular hygiene items he was forced to do without, or for how long.  The only evidence he has submitted is a list of the items he requested from Defendant Nichols on February 4, 2004.  To establish an Eighth Amendment violation, Plaintiff must show that any deprivation of personal hygiene items was sufficiently serious. See Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). One important factor is the length of time the condition in question prevailed.  See id. at 1311-12. When the deprivation is short lived, courts have been reluctant to find a constitutional violation.  See id. at 1312. Without any specific evidence as to what Plaintiff went without, and for how long, he cannot establish an Eighth Amendment violation.

There is also no evidence that Defendant Nichols acted with deliberate indifference.  Plaintiff has alleged in his objection to the motion for summary judgment that "the grievance was sent to Mr. Nichols and the [Plaintiff] was called into the office where the [Plaintiff] signed the gr[ie]vance in front of Mr. Nichols and a copy was made."

---

[3] Plaintiff has attached to his unsworn objection another Indigent Request Form, dated March 1, 2004, but makes no comment about the form in the objection itself, such as to whom it was submitted, the circumstances surrounding its submission, or its disposition. On the staff approval line, the words "not on list" appear as they did on the February form that both Plaintiff and Defendants have previously addressed.

Plaintiff's Objection, p. 1. However, the relief granted on the response to the grievance was that "As per Barbara Pearman, Assistant Administrator of Finance and Accounting, you *will be placed* on the indigent list." Special Report, Att. 3, p. 1 (emphasis added). When Plaintiff submitted his request for indigent supplies on February 4, 2004, it is undisputed that Defendant Nichols checked the indigent list provided by the JCCC business office, and that Plaintiff's name was not on the list. Special Report, Att. 9, ¶ 3; Att. 10. Even though Plaintiff was not on the indigent list, Defendant Nichols then made a telephone call to request additional information regarding Plaintiff's inmate trust fund account, and was told that because he had received institutional pay of $20.00 and a seasonal bonus of $5.00, he did not qualify as indigent. Special Report, Att. 9, ¶ 4.[4] These actions on the part of Defendant Nichols do not show deliberate indifference even toward Plaintiff's request for indigent supplies. More importantly, Plaintiff has failed to show that Defendant Nichols was disregarding what he knew to be an excessive risk to Plaintiff's health:

> Even if plaintiff alleged that defendants denied him basic hygiene supplies, he has not alleged that defendants acted with deliberate indifference to his health and safety. The Constitution does not permit inhumane prisons, but neither does it mandate comfortable ones. To state an Eighth Amendment claim, plaintiff must allege that prison officials have shown "deliberate indifference" to his serious medical needs. In other words, plaintiff must allege that defendants knew of and disregarded an excessive risk to inmate health and safety. Plaintiff has not alleged facts from which a jury might conclude that defendants denied him the basic hygiene items available to indigent inmates or that such a deprivation placed his health and safety at risk. Moreover, to the extent that the temporary deprivation of basic hygiene items could constitute an Eighth Amendment violation, plaintiff

---

[4]Moreover, Defendant Nichols did both of these things despite the fact that the indigent request form states that the inmate understands that if the form is not "turned in to the unit counselor by the 1st of each month by 3:00 p.m., I will not receive supplies for the month."

> has not alleged that defendants were aware of an "excessive risk" to his health and safety. The Court therefore sustains defendants' motion to dismiss plaintiff's cruel and unusual punishment claim.

<u>Owens v. Sebelius</u>, 357 F.Supp.2d 1281, 1285-1286 (D. Kan. 2005) (citations omitted); <u>Taylor v. Sebelius</u>, 350 F.Supp.2d 888, 895 (D. Kan. 2004) (same).

The affidavit from Plaintiff's unit manager shows that he received either good or outstanding ratings for personal hygiene during the period in question, further supporting Defendant Nichols' claim that he did not even know that a lack of hygiene supplies was an issue for Plaintiff.

Plaintiff has failed to come forward with evidence showing that either of the two named Defendants has acted with deliberate indifference to his health and safety. In his unsworn objection, Plaintiff states that an inmate has a basic human right to be clean, that denying this right should not be permitted, and that "the defendants were doing this to the [Plaintiff] for 14 months." Plaintiff's Objection, p. 3. Plaintiff does not state what *these Defendants did*, however, other than what has been recited. He also states in his unsworn objection that he only got soap from the kitchen or pieces of soap from the shower, and that he lost two toenails and a thumbnail, and had jock itch due to a fungus and "the lack of personal hygiene," Plaintiff's Objection, p. 8, but has come forward with no evidence showing that Defendants were aware of these problems.[5] At most, Plaintiff has shown what appears to be a communication breakdown after Defendant Franklin granted his request to be placed on the list for indigent supplies. It is perhaps the ultimate irony that if this is what occurred, complete exhaustion of the administrative

---

[5] Defendants note that they were served summonses in this action on April 14, 2005. Defendants' Motion, p. 14.

15

process was far from "unnecessary" and would have indeed served its purpose well.[6]  It is recommended that summary judgment be granted to both Defendants Franklin and Nichols on Count I.

**B.  COUNTS II AND III**

Defendants next contend that Plaintiff has failed to show that he is entitled to relief on Counts II and III. Defendants' Motion, p. 14.  Plaintiff alleges in Count II that Defendants have interfered with his right to petition the government by denying his request for indigent supplies after Defendant Franklin granted his request to be put on the indigent list, and because after he "attempted to resubmit the grievance ... it was returned to me for being untimely."  Complaint, p. 3.

Plaintiff has failed to articulate any basis upon which to base a claim for a violation of his First Amendment rights.  Plaintiff states that the "failure to permit[] further administrative review of the subject matter is clearly retaliatory in nature." Complaint Att., p. 3.  Although denial of grievance procedures may serve as the basis for a First Amendment claim, cf. Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990), Plaintiff has not come forward with any facts to show that he was retaliated against in this manner for filing a grievance regarding indigent supplies. In fact, all he has shown

---

[6]Hopefully without putting too fine a point on it, the undersigned notes the distinction between the situation here and the one in Ross v. County of Bernalillo, 365 F.3d 1181, 1187 (10th Cir. 2004),upon which the Tenth Circuit relied in reversing the dismissal without prejudice of this case for failure to exhaust administrative remedies. In Ross, the inmate began the grievance process by submitting a pre-grievance resolution form complaining that the prison shower was unreasonably dangerous because it lacked a shower mat. The prison responded by furnishing the shower with a mat, thus fully alleviating the problem and eliminating the possibility of further administrative relief. Here, the prison warden agreed to furnish the mat, so to speak, but his underling allegedly *did not furnish* it. In such a situation, there is not only the possibility, but the probability, of further relief.

is that the February 9, 2004 grievance was returned to him because it did not have a request to staff attached as required. Plaintiff's Objection, Ex. 5. Plaintiff apparently believes that the regulation requiring the request to staff should not have been applied to him because he had attached the indigent request form, but he does not deny that the grievance was in fact procedurally defective. Moreover, Plaintiff did not correct the deficiency. Plaintiff's showing that his grievance was returned – via a form indicating that such grievances are routinely returned for a number of reasons – does not show violation of his First Amendment rights. The same is true of the grievance appeal returned by Ms. Guilfoyle. The paperwork submitted by Plaintiff was clearly procedurally defective, and was not corrected and resubmitted. If the denial of grievances alone cannot give rise to a violation of First Amendment rights, see, e.g., Gwinn v. Awmiller, 354 F.3d 1211, 1228 (10th Cir. 2004) (absent evidence of retaliation, allegation that prison officials denied prisoner's grievances was insufficient to allege the violation of his First Amendment rights), cert. denied, 125 S.Ct. 181 (2004), the mere return of procedurally defective administrative requests – coupled with the opportunity to remedy the defects – certainly cannot.

Defendants also seek summary judgment on Plaintiff's claim in Count III that the failure to follow DOC policy regarding the rate at which legal fees are to be collected from inmate funds violates his Fourteenth Amendment rights. Plaintiff claims that under DOC OP-120230, legal fees will only be collected at a rate of twenty percent of inmate income. Complaint, p. 4. Defendants first note that Plaintiff's co-pay amounts are not state court

costs, and are not subject to the limitation he describes, and second, that DOC's failure to abide by its own policies does not in and of itself show a constitutional violation.

Defendants are correct that DOC's failure to abide by its own policies does not in and of itself show a constitutional violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." Sandin v. Conner, 515 U.S. 472, 481-82 (1995). Moreover, Plaintiff concedes that the amount he owed[7] at the time this litigation was brought was for photocopies made by him in connection with a habeas action, Complaint Att., p. 1, which are clearly legal costs – not court costs – under DOC OP-120203(E). Special Report, Att. 5, p. 3-4. Thus, under DOC policy, the legal co-pays for Plaintiff's copying costs are properly deducted from his inmate draw account each time a deposit is made until paid in full – as authorized by the inmate on the form utilized when either legal or medical services are requested. See DOC OP-030115A and DOC OP-140117A (attached to DOC OP-120203). Finally, it does not appear that either of the Defendants named herein have had any personal participation in the withdrawal of funds from Plaintiff's inmate trust fund accounts. Accordingly, they are entitled to summary judgment on Count III.

## C. QUALIFIED IMMUNITY

Finally, Defendants assert that they are entitled to qualified immunity. Defendants' Motion, p. 16. Because the Defendants are otherwise entitled to summary judgment, it is unnecessary to address this issue. "[T]he better approach to resolving cases in which

---

[7] Plaintiff now owes the filing fee in connection with the appeal he brought herein, for which he was granted in forma pauperis status. [Doc. Nos. 16, 17]. Judge Miles-LaGrange has directed the DOC to make monthly payments of 20% of the preceding month's income credited to Plaintiff's prison account whenever his account exceeds $10.00, until he has paid the total filing fee of $255.

the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." County of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998).

### RECOMMENDATION

For the reasons set forth above, it is recommended that Defendants' motion for summary judgment [Doc. No. 42] be granted. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by August 15, 2005, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter unless and until the matter is re-referred for further proceedings.

ENTERED this 25th day of July, 2005.

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE